# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

METROPOLITAN LIFE INSURANCE COMPANY,　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　　)　　　Case No. CIV-18-00131-PRW
　　　　　　　　　　　　　　　　　　　　　　)
TIFFANY BRADSHAW,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　　　　　)

## MEMORANDUM OPINION AND ORDER

On May 31, 2019, Plaintiff filed a Motion for Summary Judgment (Dkt. 27) pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Pursuant to LCvR 7.1(g), the deadline for Defendant to respond to Plaintiff's motion was June 21, 2019. On August 12, 2019, Plaintiff filed a Motion to Deem Motion for Summary Judgment as Confessed (Dkt. 29) because Defendant had failed to file any response. Even now, Defendant has failed to respond to Plaintiff's Motion for Summary Judgment (Dkt. 27) and its Motion to Deem Motion for Summary Judgment as Confessed (Dkt. 29). On March 2, 2020, the Court held a hearing on the motions to clarify the applicable law and the timeline of events. Plaintiff's local counsel was present for the hearing, but Defendant and her counsel failed to appear. At the close of the hearing, the Court asked Plaintiff to submit supplemental briefing, if necessary, to address some of the issues raised at the hearing. Plaintiff submitted its Supplement in Support of Motion for Summary Judgment with Notice of Correction (Dkt. 35) on March 23, 2020. Having reviewed Plaintiff's filings and heard its arguments,

1

the Court **GRANTS** Plaintiff's Motion to Deem Motion for Summary Judgment as Confessed (Dkt. 29)—thereby rendering all facts asserted and properly supported as undisputed—and **GRANTS** Plaintiff's Motion for Summary Judgment (Dkt. 27), all as set forth more fully below.

### *Burden of Proof*

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the court does not weigh the evidence and determine the truth of the matter asserted, but determines only whether there is a genuine dispute for trial before the fact-finder(s).[1] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[2] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[3] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[4]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[4] *Id.*

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[5] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts,"[6] or by theorizing a "plausible scenario" in support of its claims.[7] "Rather, 'the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[8] If there is a genuine dispute as to some material fact, the district court must consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party.[9]

But where the nonmovant fails to file a response within the time specified by a local rule, she "waive[s] the right to file a response and confesses all facts asserted and properly

---

[5] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. 317; *Beard v. Banks*, 548 U.S. 521, 529 (2006).

[6] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995)).

[7] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[8] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52; *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

[9] *Scott*, 550 U.S. at 380; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

supported in the motion."[10] This is consistent with the terms of Rule 56(e), which provide that a nonmovant's "fail[ure] to properly address [the movant]'s assertion of fact[s] as required by Rule 56(c)" permits the Court to "consider the fact[s] undisputed for purposes of the motion."[11] Accordingly, the Court hereby **GRANTS** Plaintiff's Motion to Deem Motion for Summary Judgment as Confessed (Dkt. 29).

"Summary judgment is not proper merely because [the nonmovant] failed to file a response," however, because "the moving party must meet its 'initial responsibility' of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law."[12] Where the evidentiary matter in support of the motion does not meet this burden, "summary judgment must be denied even if no opposing evidentiary matter is presented."[13]

### *Undisputed Material Facts*

The Federal Employees' Group Life Insurance Act (FEGLIA), 5 U.S.C. §§ 8701–8716 establishes a life insurance program for federal employees.[14] Section 8709 of the FEGLIA authorizes the Office of Personnel Management (OPM) to "purchase from one or more life insurance companies a policy or policies of group life and accidental death and dismemberment insurance to provide the benefits specified by this chapter [i.e., Chapter

---

[10] *Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2000).

[11] Fed. R. Civ. P. 56(e)(2).

[12] Murray, 312 F.3d at 1200.

[13] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment)

[14] *See Dean v. Johnson,* 881 F.2d 948 (10th Cir.1989).

87]."[15] Plaintiff, Metropolitan Life Insurance Company (MetLife), is a life insurance company from whom the OPM purchased Group Policy No. 17000-G, known as the FEGLI Policy.[16]

While employed at the U.S. Postal Service's Distribution Center in Oklahoma City, Donald Bradshaw enrolled for coverage under the FEGLI Policy.[17] When he retired, he elected to continue coverage under the FEGLI Policy.[18] Although the Motion for Summary Judgment (Dkt. 27) contained statements indicating that Mr. Bradshaw died on December 2, 2016,[19] the Claim History provided with that motion and the Death Certificate attached to Plaintiff's Supplement (Dkt. 35) conclusively demonstrate that he died on December 14, 2016.[20] Thus, death benefits in the amount of $336,000.00 became due under the provisions of the FEGLI Policy on December 14, 2016. [21]

---

[15] 5 U.S.C. § 8709(a) (2012).

[16] Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 4, at 3.

[17] *See id.* ¶ 5, at 3; Liddy Aff. (Dkt. 27-2) ¶ 4(a), at 2; Designation of Beneficiary Form (Nov. 29, 2016), Ex. A to Liddy Aff. (Dkt. 27-2) at 5.

[18] Designation of Beneficiary Form (Nov. 29, 2016), Ex. A to Liddy Aff. (Dkt. 27-2) at 5 (showing that Mr. Bradshaw is "a retiree").

[19] Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 5, at 3; Liddy Aff. (Dkt. 27-2) ¶ 4(b), at 2.

[20] Claim History, Ex. B to Liddy Aff. (Dkt. 27-2) at 7 (showing a table where the "Date of Death" is listed as "12/14/2016"); Death Certificate (Dec. 20, 2016), Ex. 1 to Aceto Aff. (Dkt. 35-1) at 5 (showing that Mr. Bradshaw died at home at 8:50 a.m. on December 14, 2016).

[21] Aceto Aff. (Dkt. 35-1) ¶ 4(c), at 2.

Section 8705(a) of the FEGLIA provides for the payment of FEGLI proceeds, establishes who may be entitled to payment, provides an order of preference among such persons, and establishes certain requirements for designating beneficiaries:

> **(a)** Except as provided in subsection (e), the amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>
>> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or, if insured because of receipt of annuity or of benefits under subchapter I of chapter 81 of this title as provided by section 8706(b) of this title, in the Office of Personnel Management. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.
>>
>> Second, if there is no designated beneficiary, to the widow or widower of the employee.
>>
>> Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.
>>
>> Fourth, if none of the above, to the parents of the employee or the survivor of them.
>>
>> Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.
>>
>> Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death.[22]

On December 29, 1994, Mr. Bradshaw executed and filed a Designation of Beneficiary form wherein he named Defendant, Tiffany Bradshaw, a partial beneficiary entitled to 50%

---

[22] 5 U.S.C. § 8705(a) (2012).

of the FEGLI proceeds.[23] But on November 29, 2016—just two weeks prior to his death—

Mr. Bradshaw executed another Designation of Beneficiary form naming another party,

D.B., as the sole beneficiary entitled to 100% of the FEGLI proceeds.[24] The pivotal issue

in this case is whether Mr. Bradshaw dispatched the new Designation of Beneficiary form

such that it was "received before death . . . in the Office of Personnel Management."

On February 2, 2017, Tiffany Bradshaw filed a claim to receive the death benefits

based on the December 29, 1994 Designation of Beneficiary form.[25] On February 6, 2017,

MetLife issued payment to Ms. Bradshaw for $168,124.28, representing 50% of the FEGLI

proceeds.[26] Broken down, that amount represented $28,000 in Basic Life Insurance, $5,000

in Option A Insurance, $135,000 in Option B Insurance, and $124.28 in delayed settlement

interest.[27] Only after payment was issued to Ms. Bradshaw did MetLife determine that a

newer Designation of Beneficiary form had been submitted to the OPM.[28] The OPM had

---

[23] *See* Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 7, at 4; Liddy Aff. (Dkt. 27-2) ¶ 4(c), at 2; Designation of Beneficiary Form (Nov. 29, 2016), Ex. A to Liddy Aff. (Dkt. 27-2) at 5.

[24] *See* Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 6, at 4; Liddy Aff. (Dkt. 27-2) ¶ 4(d), at 2; Aceto Aff. (Dkt. 35-1) ¶ 4(d), at 2.

[25] Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 6, at 4; Liddy Aff. (Dkt. 27-2) ¶ 4(c), at 2.

[26] Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 6, at 4; Liddy Aff. (Dkt. 27-2) ¶ 4(c), at 2.

[27] Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 6, at 4; Liddy Aff. (Dkt. 27-2) ¶ 4(c), at 2; Claim History, Ex. B to Liddy Aff. (Dkt. 27-2) at 7.

[28] Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 6, at 4; Liddy Aff. (Dkt. 27-2) ¶ 4(d), at 2; Letter from Jodie L. Ousley, d'Arcambal Ousley & Cuyler Burk, LLP, to Rick L. Denker (Dkt. 27-3) at 1 (July 31, 2017) ("After the payment was sent to your client, OFEGLI received a later Designation of Beneficiary from dated November 29, 2016 from the Office of Personnel Management, which did not designate your client to receive any of the funds.").

received the newer Designation of Beneficiary form on December 5, 2016—nine days before Mr. Bradshaw's death—as evidenced by a time stamp at the bottom of the form.[29]

Realizing its mistake, MetLife eventually issued payment to the correct beneficiary listed on the November 29, 2016 Designation of Beneficiary form.[30] MetLife also contacted Ms. Bradshaw on April 26, 2017, to advise that she was not entitled to receive or retain the FEGLI proceeds and to request that she remit to MetLife the money she had already received.[31] On July 31, 2017, an attorney representing MetLife wrote Ms. Bradshaw to repeat the earlier communication.[32] Despite repeated contact, Ms. Bradshaw has not returned the FEGLI proceeds inadvertently paid to her. Consequently, MetLife filed this lawsuit on February 8, 2018, asserting claims against Ms. Bradshaw for violating the FEGLIA, for unjust enrichment, and for conversion.[33] Ms. Bradshaw appeared through attorney Michael Trevino and filed an Answer (Dkt. 10) on May 4, 2018. But since then, Ms. Bradshaw has failed to respond to discovery—including requests for admission—and to respond to MetLife's Motion for Summary Judgment (Dkt. 27).[34]

---

[29] Aceto Aff. (Dkt. 35-1) ¶ 4(i), at 2; Designation of Beneficiary Form (Nov. 29, 2016), Ex. 2 to Aceto Aff. (Dkt. 35-1) at 6 (showing a time stamp that reads "REC'D OPM 12052016").

[30] Aceto Aff. (Dkt. 35-1) ¶ 4(*l*), at 3.

[31] Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 9, at 4; Liddy Aff. (Dkt. 27-2) ¶ 6, at 2.

[32] Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 9, at 4; Letter from Ousley to Denker (Dkt. 27-3), *supra* note 28, at 1.

[33] Pl.'s Compl. (Dkt. 1) ¶¶ 27–50, at 6–10.

[34] Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 11, at 5–6; Potts Aff. (Dkt. 27-4) ¶¶ 2–3, at 1–2.

*Analysis*

As stated above, summary judgment mainly hinges on whether the new Designation of Beneficiary form was "received before death . . . in the Office of Personnel Management," as required by 8705(a). If it wasn't received before death, the "designation, change, or cancellation of beneficiary . . . not so executed *and filed* has no force or effect."[35]

Actual receipt is a pre-condition to effectiveness.[36] Thus, the Court must verify strict compliance with the statutory requirement of receipt before death.[37] Upon review of the facts presented in MetLife's Motion for Summary Judgment (Dkt. 27) alone, Plaintiff fails to demonstrate conclusively that the November 29, 2016 Designation of Beneficiary form was received prior to Mr. Bradshaw's death. Rather, the motion only presents evidence and argument suggesting that the form was received after death.[38] But Plaintiff's Supplement

---

[35] § 8705(a).

[36] *Metro. Life Ins. Co. v. Bush*, 154 F.3d 1149, 1151–52 (10th Cir. 1998).

[37] *Id.* at 1152 (citing *Ward v. Stratton*, 988 F.2d 65, 66, 68 (8th Cir. 1993); *Brewer v. Zawrotny*, 978 F.2d 1204, 1206 n.2 (10th Cir. 1992); *O'Neal v. Gonzalez*, 839 F.2d 1437, 1439–40 (11th Cir. 1988)).

[38] For example, paragraph 7 in MetLife's Statement of Undisputed Facts asserts that "a Designation of Beneficiary form dated November 29, 2016 had been *submitted* prior to the Decedent's death" and cites ¶ 4(d) of an affidavit executed by David Liddy, a Director at MetLife. Pl.'s Mot. Summ. J. (Dkt. 27) ¶ 7, at 4 (emphasis added) (citing Liddy Aff. (Dkt. 27-2) ¶ 4(d), at 2). Counsel's use of the term "submitted" suggests an avoidance of the statute's operative term "received"; but those terms are not interchangeable. To submit something means "*to send* or commit for consideration," *Webster's Third New International Dictionary* 2277 (Phil Babcock Gove, Ph.D., ed., 1993) (emphasis added), or "[t]o bring up or *present* for criticism, consideration, or approval," XVII *Oxford English Dictionary* 46 (J.A. Simpson & E.S.C. Weiner, eds., 2d ed. 1989) (emphasis added). That is quite the opposite of receiving.

Moreover, the cited affidavit has nothing to say about the form being submitted prior to death. Instead, the affiant asserts that, "[*a*]*fter payment was made to Defendant of 50% of*

(Dkt. 35) corrects the date of death and clarifies the timeline of when the OPM received the November 29, 2016 Designation of Beneficiary form. The Supplement (Dkt. 35) conclusively demonstrates that the OPM received the November 29, 2016 Designation of Beneficiary form on December 5, 2016, nine days prior to Mr. Bradshaw's death. Under the new form, Defendant was not a designated beneficiary and was not entitled to receive or keep the FEGLI proceeds paid to her.

That fact now established, summary judgment hinges on whether Plaintiff is entitled to judgment as a matter of law under theories of conversion or unjust enrichment. Under the undisputed facts shown by the summary judgment record in this case, Plaintiff is not entitled to prevail on its conversion claim as a matter of law. Oklahoma law regarding the tort of conversion is well settled and the elements of liability are clear: "In terms of essential elements, one seeking damages for conversion must plead and prove (a) he owns or has a right to possess the property in question, (b) that defendant wrongfully interfered with such property right, and (c) the extent of his damages."[39] Further, "[i]t is not necessary to constitute a conversion that the property come into the defendant's possession wrongfully. Nor is it necessary that the alleged converter apply the property to his own use, or be in

_____

*the FEGLI Proceeds*, Plaintiff received a later Designation of Beneficiary form, dated November 29, 2016, which did not designate Defendant to receive any of the FEGLI Proceeds" and cites the Designation of Beneficiary form dated November 29, 2016 attached thereto as Exhibit A. Liddy Aff. (Dkt. 27-2) ¶ 4(d), at 2 (emphasis added). The affiant's statement suggests that MetLife received the form after February 6, 2017—i.e., over two months after death.

[39] *White*, 1979 OK CIV APP 6, ¶ 4, 591 P.2d at 350, *cited in Steenbergen v. First Fed. Sav. & Loan of Chickasha*, 1987 OK 122, 753 P.2d 1330; *accord* Okla. Unif. Jury Instr.–Civ. 3d # 27-1 (rev. 2009).

bad faith."[40] However, "if the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover as for a conversion thereof."[41] Where the undisputed facts establish all elements of conversion, summary judgment may properly be entered in Plaintiff's favor.[42] Plaintiff's claim fails because it voluntarily gave the FEGLIA proceeds to Defendant; Defendant did not take the proceeds without Plaintiff's consent. Thus, Plaintiffs' motion for summary judgment on the conversion claim is denied.

Under the undisputed facts shown by the summary judgment record in this case, however, Plaintiff is entitled to prevail on its unjust enrichment claim. Under Oklahoma law, "[u]njust enrichment is a condition which results from the failure of a party to make restitution in circumstances where not to do so is inequitable, *i.e.,* the party has money in its hands that, in equity and good conscience, it should not be allowed to retain."[43] Thus, the claim hearkens back to the common-law claim of assumpsit for money had and received[44] or to a quasi-contract claim in which "sufficient privity" arises by "an

---

[40] *Steenbergen*, 1987 OK 122, ¶ 9, 753 P.2d at 1332 (citing *Fed. Nat'l Bank of Shawnee v. Lindsey*, 1935 OK 455, 43 P.2d 1036; *U.S. Zinc Co. v. Colburn*, 1927 OK 76, 255 P. 688; *Stack v. Gudgel*, 158 P. 1144 (Okla. 1916); *White v. Webber-Workman Co.*, 1979 OK CIV APP 6, 591 P.2d 348).

[41] Rose Bros., Inc. v. City of Alva, 1960 OK 231, ¶14, 356 P.2d 1083, 1085 (citing *Okla. Farmer's Nat'l Grain Corp. v. Kirkendall*, 1938 OK 337, 79 P.2d 570); *accord Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 2016 OK 55, ¶ 12, 374 P.3d 820, 825 ("Conversion of personal property does not require the property be obtained by wrongful means, but it must be either obtained or appropriated without the owner's consent.").

[42] *See*, *e.g.*, *Steenbergen*, 1987 OK 122, ¶ 12, 753 P.2d at 1333.

[43] *Okla. Dep't of Sec. ex rel. Faught v. Blair*, 2010 OK 16, ¶ 22, 231 P.3d 645, 658 (citing *Harvell v. Goodyear Tire & Rubber Co.,* 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035).

[44] *See Gaines v. Miller*, 111 U.S. 395, 387–98 (1884) ("Whenever one person has in his hands money equitably belonging to another, that other person may recover it by assumpsit

---

implication of law that he [i.e., the person who has another's money which he in equity and good conscience has no right to keep] will pay it over."[45] The Oklahoma Supreme Court has generally defined the elements of an unjust enrichment claim as: "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another."[46] Although she did not wrongfully take the $168,124.68 that MetLife sent her, Defendant's wrongful retention of the money after MetLife's discovery of a mistake of fact is unjust and inequitable. Defendant is not entitled to a windfall, and MetLife should not be held liable twice over for the same FEGLI proceeds.[47] Consequently, MetLife is entitled to summary judgment on its unjust enrichment claim and to restitution as a matter of law.

---

for money had and received." (citations omitted)), *quoted in Brooks v. Hinton State Bank*, 1910 OK 61, ¶ 7, 110 P. 46, 47; *Rogers v. Lassiter*, 1945 OK 333, ¶ 0, 164 P.2d 632, 633 (In "an action for money had and received[,] . . . [t]he primary question . . . is, has defendant the possession of money belonging to plaintiff which he refuses to pay over? . . . While the action for money had and received is a law action triable to a jury, its determination is controlled by principles of equity and fair dealing"). *See generally Clay v. Indep. Sch. Dist. No. 1 of Tulsa Cty.*, 1997 OK 13, ¶ 20 n.34, 935 P.2d 294, 315 n.34 (Opala, J., dissenting), for a discussion of the history behind assumpsit actions, including the 1602 English case that first allowed the use of assumpsit to enforce a debt without proof that the defendant had made a subsequent promise to pay.

[45] *Brooks*, 1910 OK 61, ¶ 6, 110 P. at 47; *cf. Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (discussing cases where "the plaintiff had a right to restitution at *law* through an action derived from the common-law writ of assumpsit[,] . . . [which] w[as] viewed essentially as [an] action[] at law for breach of contract (whether the contract was actual or implied)").

[46] *Blair*, 2010 OK 16, ¶ 22, 231 P.3d at 658.

[47] *Accord Metro. Life Ins. Co. v. Faircloth*, No. 7:12-cv-00350-BR, 2013 WL 12193433, at *1 (E.D.N.C. July 31, 2013) (finding that MetLife was entitled to default judgment on its unjust enrichment claim against a defendant widow who received an overpayment of FEGLI proceeds); *Metro. Life Ins. Co. v. Brown*, No. 2:97-cv-02002, 1998 WL 1084680, at *4 (W.D. Pa. Dec. 1, 1998) (granting summary judgment under the same circumstances).

Having so held, the Court turns lastly to Plaintiff's prayer for prejudgment interest. Prejudgment interest is only allowed when it is authorized by statute.[48] Defendants do not cite any particular statute, but title 23, section 6 of the Oklahoma Statutes is applicable in this case because the amount of damages is a sum certain, $168,124.68. Section 6 provides that "[a]ny person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."[49] Interest is allowed at the rate of 6% pursuant to title 15, section 266 of the Oklahoma Statutes.[50] Because Defendant had no way of knowing she needed to repay MetLife until MetLife informed her of the new Designation of Beneficiary form, interest should not begin to accrue until April 26, 2017.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Deem Motion for Summary Judgment as Confessed (Dkt. 29) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 27) is **GRANTED** as to Plaintiff's unjust enrichment claim against Defendant Tiffany Bradshaw. Accordingly, Defendant is **ORDERED** to pay Plaintiff $168,124.68

---

[48] *H.B. Krug v. Helmerich & Payne, Inc.*, 2015 OK 74, ¶ 23, 362 P.3d 205, 214; *Sisney v. Smalley*, 1984 OK 70, ¶ 8, 690 P.2d 1048, 1050.

[49] Okla. Stat. tit. 23, § 6 (2011).

[50] Okla. Stat. tit. 15, § 266 (2011) ("The legal rate of interest shall be six percent (6%) in the absence of any contract as to the rate of interest . . . .").

plus prejudgment interest, calculated as simple interest at the statutory legal rate of six percent (6%) per annum, from April 27, 2016.

**IT IS SO ORDERED this 30th day of March, 2020.**

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE